UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF TRUSTEES, et al.,

Plaintiffs,

v.

PIPE-NET, INC.,

Defendant.

Case No. 25-cv-08910-LJC

**ORDER TO SHOW CAUSE WHY MOTION FOR DEFAULT JUDGMENT SHOULD NOT BE DENIED IN PART**

Re: Dkt. No. 22

## I.      INTRODUCTION

Plaintiffs, the trustees of four union benefit trust funds, bring this action under the Employee Retirement Income Security Act of 1974 (ERISA) to enforce Defendant Pipe-Net, Inc.'s contribution and reporting obligations. The Clerk entered Pipe-Net's default after it failed to appear and defend this case, and Plaintiffs now move for default judgment. For the reasons discussed below, Plaintiffs are ORDERED TO SHOW CAUSE why their Motion should not be denied in part. Plaintiffs shall file a response no later than August 3, 2026.

The hearing previously set for July 14, 2026 is CONTINUED to October 6, 2026 at 10:30 AM in Courtroom G. Not all parties have appeared and consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), so this Court anticipates issuing a report and recommendation for resolution of this case by a district judge after Plaintiffs respond to this Order to Show Cause.

## II.      BACKGROUND

Because a plaintiff's factual allegations are generally taken as true in resolving liability on a motion for default judgment, this summary presumes that the allegations of Plaintiffs' Complaint are true.

Plaintiffs are the trustees of the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Laborers Pension Trust Fund for Northern California (in which capacity they are also responsible for the Laborers Annuity Plan for Northern California), and the Laborers Training and Retraining Trust Fund for Northern California.  Compl. (ECF No. 1) ¶ 2.  Pipe-Net is an employer that agreed to be bound to a collective bargaining agreement with the Northern California District Council of Laborers, which required Pipe-Net to submit contribution reports and make timely payments to Plaintiffs' trust funds, among other terms and requirements.  *Id.* ¶¶ 4, 5.  According to Plaintiffs' Complaint, Pipe-Net had at the time of its filing "accrued at least $19,416.02 in delinquent fringe benefit contributions; at least $6,984.85 in liquidated damages and interest on contributions paid but paid late; and at least $6,272.92 in liquidated damages and interest on contributions reported but not paid."  *Id.* ¶ 13.

Plaintiffs' Complaint lists the following claims, which might more accurately be considered remedies: (1) "Breach of Contract Statutory Damages Under 29 U.S.C. §§ 1132(g) & 1145" (two provisions of ERISA), Compl. ¶¶ 10–14; (2) "Actual Damages for Breach of Contract," *id.* ¶¶ 15–16; and (3) "Injunctive Relief," *id.* ¶¶ 17–19 (capitalization altered from all-caps headings for each claim).  In their prayer for relief, Plaintiffs seek delinquent contributions, interest, liquidated damages, attorneys' fees, costs, and injunctive relief.  Compl. at 6 (Prayer for Relief).

The Clerk entered Pipe-Net's default on March 23, 2026.  ECF No. 19.  Plaintiffs now move for default judgment, ECF No. 22 (Mot.), seeking a total judgment of $58,071.53, interest going forward at a contractual rate of 1.5 percent per month until paid, and an injunction requiring Pipe-Net "to timely submit all required monthly contribution reports and contributions due and owing by Defendant to Plaintiffs for so long as Defendant remains bound to contribute to the Plaintiffs," ECF No. 22-10 (Proposed Order and Judgment).  Plaintiffs' Motion is supported by a declaration by Michelle Lauziere, Director of Employer Services of Plaintiffs' administrative office, ECF No. 22-1, and a declaration by Plaintiffs' counsel Noah Stark, ECF No. 22-5.

United States District Court
Northern District of California

2

### III. LEGAL STANDARD

A court may enter default judgment on a motion by a plaintiff after the clerk has entered a defendant's default. Fed. R. Civ. P. 55(b)(2). After considering threshold issues of jurisdiction and service of process, courts consider the following factors in exercising their discretion to grant or deny default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Courts evaluating a motion for default judgment take the factual allegations of a plaintiff's complaint as true except as to damages, which must be shown by evidence. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

### IV. ANALYSIS

#### A. Jurisdiction

##### 1. Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs here seek relief under federal law, specifically ERISA. Compl. ¶¶ 14, 18–19; *see* ECF No. 22 (Mot.) at 11–12, 17. The Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331, as well as under ERISA's specific grant of exclusive federal jurisdiction, 29 U.S.C. § 1132(e)(1).

##### 2. Personal Jurisdiction

"Personal jurisdiction over a defendant may be acquired in one of two ways: by personal service of that defendant [in the jurisdiction] or by means of a defendant's 'minimum contacts' with the jurisdiction." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where a federal statute provides for nationwide service of process, the "minimum contacts" test for personal jurisdiction looks to the defendant's contacts with the United States as a whole. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). "The

United States District Court
Northern District of California

3

ERISA statute so provides," and therefore requires only sufficient contact between defendants and the United States. *Cripps*, 980 F.2d at 1267 (citing 29 U.S.C. § 1132(e)); *see, e.g.*, *Reg'l Loc. Union Nos. 846 & 847 v. Jayco Steel Servs., Inc.*, No. 3:13-cv-02267-ST, 2015 WL 2123757, at *4 (D. Or. Apr. 29, 2015); *Vivien v. Worldcom, Inc.*, No. C 02-01329 WHA, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002).

Pipe-Net is a California corporation. Compl. ¶ 3. "Courts can exercise general personal jurisdiction over a corporation in its state of incorporation." *Green Pet Shop Enters., LLC v. Grand Innovations USA, LLC*, No. 2:21-cv-06156-MCS-MAA, 2022 WL 2235474, at *1 (C.D. Cal. Apr. 13, 2022) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Pipe-Net therefore has sufficient ties with the United States to fall within this Court's personal jurisdiction, and would have sufficient contacts with California to establish personal jurisdiction even if ERISA did not call for a nationwide test.

### B.    Service of Process

As another threshold issue, the Court must determine that service of process was proper. *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). Service must comply with Rule 4 of the Federal Rules of Civil Procedure, which authorizes service either through several means specifically listed or in any manner allowed by state law. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A). Rule 4 allows service on a corporation " by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

After previous unsuccessful efforts to serve Pipe-Net through its CEO Albert Gonzales, who Plaintiffs discovered was deceased, Plaintiffs sought to serve Pipe-Net's corporate secretary and registered agent for service of process, who is listed as Manuel Ray Rodriquez (with a Q) in Pipe-Net's corporate filings with the California Secretary of State. ECF No. 22-5 (Stark Decl.) ¶ 3 & Ex. A. Plaintiffs identified a Manuel Rodriguez (with a G) as a beneficiary of the late CEO Gonzales's trust, which held Pipe-Net as an asset. *Id.* ¶ 3 & Ex. B. Based on the connections to

4

Gonzales and Pipe-Net, Plaintiffs concluded that Manuel Rodriguez and Manuel Ray Rodriquez were the same person, and personally served that person at an address listed for Manuel Rodriguez in filings related to the trust. *See id.*; ECF No. 14 (Proof of Service). The proof of service completed by the process server indicates that "Manual Ray Rodriquez - Registered Agent for Service of Process" for Pipe-Net was personally served at the address Plaintiffs found for "Manuel Rodriguez."

Based on the record available, the undersigned concludes that Plaintiffs' inference was correct and that the Manuel Rodriguez listed in the trust documents is the same person as the Manuel Ray Rodriquez listed as Pipe-Net's corporate secretary and registered agent. Plaintiffs therefore properly served Pipe-Net's "officer" pursuant to Rule 4(h)(1)(B).[1]

### C.    *Eitel* Factors

Most of the *Eitel* factors either weigh in favor of default judgment or are inapplicable where, as here, a defendant has failed to appear. With no other avenue apparent to resolve this case, Plaintiffs will be prejudiced if default judgment is not granted because they will be left without a remedy. There is no indication that Pipe-Net's default was due to excusable neglect—Plaintiffs properly served Pipe-Net as discussed above, and also mailed Pipe-Net a copy of the entry of its default, *see* ECF No. 21—nor is there any indication Pipe-Net would dispute any material facts. Notwithstanding the strong public policy favoring decisions on the merits, such a decision is not possible when Pipe-Net has failed to appear or defend and there is no indication that it intends to do so.

The sum of money at stake is not so high as to weigh against granting default judgment to the extent supported by evidence, an issue discussed separately below. "The remaining factors, 'the merits of plaintiff's substantive claim' and 'the sufficiency of the complaint,' are intertwined where, as here, the case has not advanced beyond the pleading stage." *Dist. Council 16 N. Cal.*

---

[1] The Court need not reach the question of whether service was also proper on Rodriguez/Rodriquez as an "agent authorized by appointment or by law to receive service of process." *See* Fed. R. Civ. P. 4(h)(1)(B). Plaintiffs have not specifically addressed that prong of the rule, nor its requirement that "if the agent is one authorized by statute and the statute so requires," service would have also required "mailing a copy of [the summons and complaint] to the defendant."

United States District Court
Northern District of California

United States District Court
Northern District of California

*Health & Welfare Tr. Fund v. Prod. Serv. & Lab., Inc.*, No. 20-cv-2063-JCS, 2022 WL 17371170, at *7 (N.D. Cal. Sept. 13, 2022), *recommendation adopted*, 2022 WL 17371142 (N.D. Cal. Oct. 25, 2022).

ERISA requires employers who are "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to do so, a fiduciary may bring an action to enforce those obligations. If the fiduciary prevails, "the court shall award the plan":

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions [as provided by the plan[2]],
>
> (C) an amount equal to the greater of--
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Plaintiffs have sufficiently alleged that Pipe-Net breached its obligation to pay (or to pay timely) contributions owed under the terms of the multiemployer plans at issue. *E.g.*, Compl. ¶¶ 4–9, 11. The undersigned therefore concludes that Plaintiffs have pleaded a meritorious claim.

**D.      Damages**

As noted above, while a plaintiff may rely on the allegations of its complaint to establish the merits of its claim for default judgment, the plaintiff must prove its damages with evidence. *TeleVideo Sys.*, 826 F.2d at 917–18. The damages Plaintiffs have requested in this case fall in two

---

[2] "For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2).

broad categories: (1) unpaid contributions, interest, and liquidated damages; and (2) attorneys' fees and costs of collection efforts.

### 1.    Contributions, Interest, and Liquidated Damages

To support their request for damages (other than attorneys' fees), Plaintiffs rely on the declaration of Michelle Lauziere, Director of Employer Services for the Laborers Funds Administrative Office of Northern California, Inc.  ECF No. 22-1.  Lauziere details the amounts that Pipe-Net purportedly failed to pay, and attaches summary charts that she or her staff apparently prepared on Plaintiffs' behalf.  *See* ECF Nos. 22-3, 22-4 (Lauzire Decl. Exs. B, C).

This Court has previously addressed such evidence in another case brought by the same Plaintiffs and some of the same counsel, where Plaintiffs also relied on a declaration by Lauziere attaching similar summary charts: "Permitting Plaintiffs to rely on their own say-so of what [Defendant] owes would undermine the requirement to prove damages through evidence— particularly where underlying evidence that has not been provided is apparently available."  *Bd. of Trs., Laborers Health & Welfare Fund for N. Cal. v. Garrison Demolition & Eng'g, Inc.* (*Garrison I*), No. 25-cv-02878-TLT (LJC), 2025 WL 2522378, at *5 (N.D. Cal. Sept. 2, 2025) (Order to Show Cause).  That Order also addressed why the Ninth Circuit cases that Plaintiffs cite again here, ECF No. 22 at 18, do not "excuse trust funds from offering underlying evidence to support their requests for damages when moving for default judgment," *Garrison I*, 2025 WL 2522378, at *5.

Here, much like in *Garrison*, Lauziere states that her office considered "Defendant's contribution remittance reports and payments submitted to the Trust Funds to determine whether all required contributions Defendant had self-reported to the Trust Funds were paid."  ECF No. 22-1, ¶ 20.  Just as in that case, Plaintiffs are ORDERED TO SHOW CAUSE why their request for unpaid contributions, as well as interest and liquidated damages on unpaid and late-paid contributions, should not be denied for failure to submit the contribution reports or other underlying evidence on which Plaintiffs base such damages.  Plaintiffs shall file a response either attaching that underlying evidence or arguing why that evidence should not be required no later than August 3, 2026.

### 2.    Post-Judgment Interest

Plaintiffs seek an order and judgment providing that "[i]nterest on unpaid delinquent contributions shall continue to accrue at the rate provided for under Defendant's agreements with the Plaintiffs of 1.5 percent per month until paid."  ECF No. 22-10, ¶ 3.  Though contractual interest rates generally control in an ERISA action through entry of judgment, post-judgment interest is typically governed by 28 U.S.C. § 1961, which provides for interest at "at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding[] the date of judgment."  28 U.S.C. § 1961(a); *see Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001) (addressing a dispute over the point in time in an ERISA case at which a higher prejudgment interest rate should have given way to the lower statutory post-judgment interest rate under § 1961); *Locals 302 & 612 v. Les Russell Const., LLC*, No. C12-860-JPD, 2012 WL 4026866, at *2 (W.D. Wash. Sept. 12, 2012) ("The Court notes, however, that this Court's entry of judgment will bar further recovery of interest at the pre-judgment rate.").

Plaintiffs are ORDERED TO SHOW CAUSE why post-judgment interest should not be set at the statutory rate.  If they believe they are entitled to post-judgment interest at the rate set by contract for delinquent contributions, they must identify legal authority to that effect.

### 3.    Attorneys' Fees and Costs

ERISA authorizes recovery of "reasonable attorney's fees and costs of the action" when a fiduciary successfully sues an employer.  29 U.S.C. § 1132(g)(2)(D).  Plaintiffs seek attorneys' fees totaling $12,070 and costs totaling $2,592.95.  ECF No. 22-8 at 2; ECF No. 22-9 at 3.

Plaintiffs' fees were incurred by two shareholder attorneys (Kristina Hillman and Sean McDonald) at a rate of $350 per hour, two associate attorneys (Norey Navarro and Noah Stark) at a rate of $300 per hour, and three paralegals or senior paralegals (Aaron Nathan, Teresa Alou, and Muey Saeteun) at a rate of $150 per hour.  ECF No. 22-5, ¶ 7.  McDonald, Navarro, and Stark billed the vast majority of the 40.45 hours for which Plaintiffs seek recovery, with each of the other timekeepers billing no more than two hours.  *See id.*  The Court has reviewed the detailed billing records submitted with Plaintiffs' Motion and finds that all of Plaintiffs' counsel's fees were incurred for reasonable amounts of work reasonably connected to the prosecution of this

case.  ECF No. 22-8.  The Court also finds Plaintiffs' counsel's billing rates to be reasonable in light of each professional's experience and the prevailing rates in the local market.  *See* ECF No. 22-5, ¶¶ 8–14; *Villasenor v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 18-cv-06628-BLF, 2021 WL 242924, at *8 (N.D. Cal. Jan. 25, 2021) (awarding fees at rates of $650 per hour for law firm partners and $190 per hour for senior paralegals in an ERISA case).

Plaintiffs' costs—for a filing fee, reproduction and service of documents, legal research, and researching an address for service on Pipe-Net—mostly also appear to have been reasonably incurred.  ECF No. 22-9 at 3.  The Court has identified only one claimed cost that may not be valid: a $367.55 charge on November 26, 2025 for "Service of documents Case Management Statement (ASAP Legal SF34062210 11/26/25) Pipe-Net, Inc, CA; US District Court."  ECF No. 22-9 at 3.  No case management statement has ever been filed in this case, *see* ECF No. 15, and the docket does not reflect service of any other documents on Pipe-Net on that date.  Plaintiffs are ORDERED TO SHOW CAUSE why recovery of that $367.55 charge should not be denied.

### E.    Injunctive Relief and Continuing Jurisdiction

Plaintiffs request injunctive relief requiring Pipe-Net to submit timely monthly contribution reports and payments going forward.  ECF No. 22 at 23; ECF No. 22-10 (Proposed Order and Judgment) at 4, ¶ 4.

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Plaintiffs have not addressed those requirements in their Motion.  *See* ECF No. 22 at 12.

Courts routinely grant injunctions in similar cases requiring defendants to comply with their agreements to submit contribution reports, and the Court is inclined to recommend such an injunction here.  *See, e.g.*, *Bd. of Trs., Laborers Health & Welfare Fund for N. Cal. v. Garrison*

United States District Court
Northern District of California

*Demolition & Eng'g, Inc.* (*Garrison II*), No. 25-cv-02878-TLT (LJC), 2025 WL 3900808, at *9 (N.D. Cal. Nov. 17, 2025), *recommendation adopted*, 2025 WL 3907735 (N.D. Cal. Dec. 3, 2025). Pipe-Net's "failure to provide reports leaves Plaintiffs unable to determine the full extent of any unpaid contributions." *See id.* "[S]uch uncertainty is not itself redressable through remedies at law, and . . . both the balance of hardships to the parties and the public interest favor requiring [Pipe-Net] to honor its contractual obligation to provide reports—at least to the extent that [Pipe-Net] may be continuing to perform work for which contributions are owed." *See id.* A permanent injunction requiring Pipe-Net to provide the contribution reports is therefore warranted.

With respect to the actual contributions, however, Pipe-Net has not explained how an injunction requiring payment serves to address an injury for which "remedies available law, such as monetary damages, are inadequate." *See eBay*, 547 U.S. at 391. The same was true in *Garrison*, where this Court recommended denying such an injunction and a district judge adopted that recommendation. *Garrison II*, 2025 WL 3900808, at *9. Plaintiffs are therefore ORDERED TO SHOW CAUSE why their request for an injunction requiring future payments should not be denied.[3]

The Court is inclined to recommend that the district court retain jurisdiction to enforce the terms of any judgment in this action.

## V. CONCLUSION

For the reasons discussed above, Plaintiffs are ORDERED TO SHOW CAUSE why their Motion for Default Judgment should not be denied as to the following issues: (1) delinquent contributions, interest, and liquidated damages, for which Plaintiffs have not submitted underlying evidence; (2) post-judgment interest at a rate greater than provided by 28 U.S.C. § 1961; (3) a $367.55 cost dated November 26, 2025; and (4) an injunction requiring future payment of contributions.

Plaintiffs shall file a response addressing those issues no later than August 3, 2026. The

[3] The Court's concern that the specific legal remedy of injunctive relief may not be available for that purpose should not be understood as questioning Pipe-Net's contractual obligations to make future payments to the extent that it might continue to engage in work for which such payments are owed.

hearing on Plaintiffs' Motion is continued as stated above.

**IT IS SO ORDERED.**

Dated: July 13, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

11